UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| U.S. INFORMATION SYSTEMS, INC., <br><br> plaintiff <br><br> vs. <br><br> INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL UNION NUMBER 164, AFL-CIO, <br><br> defendant-third party plaintiff <br><br> vs. <br><br> GALE CONSTRUCTION COMPANY, ERNST & YOUNG LLP, PREFERRED COMMUNICATION TECHNOLOGIES, ABC CORPORATIONS 1-26, AND JOHN DOES 1-26 (representing fictitious defendants), <br><br> third party defendants. | Hon. Jose L. Linares <br><br> CIVIL ACTION NO. 2:08-cv-01125 JLL <br><br> **FINAL PRETRIAL ORDER** |

This matter having come before the Court for a pretrial conference pursuant to Fed.R.Civ. P. 16; Walder, Hayden & Brogan, P.A. and Laura G. Weiss, Esq., having appeared for plaintiff, and Kroll Heineman Carton, LLC, having appeared for defendant International Brotherhood of Electrical Workers Local Union Number 164, AFL-CIO ("Local 164") (Raymond G. Heineman, Esq., appearing); and counsel all having been notified that:

1. a trial in this matter has been scheduled before Hon. Jose L. Linares on September 7, 2011,

2. the pretrial submissions detailed ¶¶2, 18 and 19 below are to be submitted no later

than **two (2) weeks prior to trial** or they will be deemed waived; and

    3.    a pretrial housekeeping conference is scheduled before Hon. Jose L. Linares on

_____, 2011.

The following Final Pretrial Order is hereby entered:

    1.    JURISDICTION (Set forth specifically).

This court has jurisdiction over this action under the principles of diversity of citizenship pursuant to 28 U.S.C. §1332. This court also has jurisdiction over this action pursuant to the provisions of §303 of the NLRA (29 U.S.C. §187), under 28 U.S.C. §1331, relating to civil actions arising under the United States Constitution, laws or treaties of the United States and under 28 U.S.C. § 1337, relating to civil actions or proceedings arising under an Act of Congress relating to commerce.

    2.    PENDING/CONTEMPLATED MOTIONS/TRIAL BRIEFS (Set forth all pending or contemplated motions, whether dispositive or addressed to discovery or the calendar. Also set forth the nature of the motion and the return date. If the Court indicated that it would rule on any matter at pretrial, summarize that matter and each party's position. NOTE: ALL REMAINING PRE-TRIAL MOTIONS INCLUDING DAUBERT AND IN LIMINE MOTIONS SHALL BE FULLY BRIEFED AND FILED NO LATER THAN TWO WEEKS PRIOR TO TRIAL. Only those motions listed herein will be entertained prior to trial.)

The Trial briefs are not required in light of the "damages" and "fees" motions previously filed. The court will accept the September 24, November 1 and November 22, 2010 briefs (Damages: ECF Nos. 120-2, 131 and 133, and Fees (if necessary): ECF Nos. 122-2, 130 and 132.)

The parties may file *in limine* motions as contemplated by and in accordance with this court's July 8, 2011 order (ECF No. 143), paragraph 1. **By August 12, 2011.** *[handwritten: MY]*

    3.    STIPULATION OF FACTS (Set forth in narrative form a comprehensive listing of all uncontested facts, including all answers to interrogatories and admissions, to which there is agreement among the parties.)

The parties have stipulated to the following facts:

### Prior findings by the Court

    1.    On May 10, 2010, the Hon. Jose L. Linares entered an order and an opinion granting partial summary judgment in favor of the plaintiff and against defendant Local 164 for liability only. The Court's order (ECF No. 97), and its opinion (ECF No. 96), are incorporated

herein by reference.

2.  The Court determined that Local 164 had conducted a secondary boycott in violation of 29 U.S.C. §158(b)(4)(i)(B), as well as 29 U.S.C. §187(a) and 187(b).

3.  The Court specifically found that Local 164's picket was not intended to educate about "area standard wages" (which local 164 had alleged), but that Local 164's "true object" was to "force PCT to cease doing businesses with the Plaintiff in order to obtain the Ernst & Young telecommunications Project for one of its own signatory contractors," which picketing "for such a proscribed object constitutes a secondary boycott in violation of 29 USC §158(b)(4)(i)(B)."

4.  The Court held that plaintiff's state-law claims for tortiuous interference were completely preempted by § 303 of the LMRA.

**First Project**

5.  On or about August 1, 2007, the plaintiff and third party defendant Preferred Communications Technologies ("PCT") entered into Joint Venture and Master Subcontractor agreements pursuant to which the gross profit derived from the first Ernst & Young ("E&Y") project at issue in this litigation would be divided equally between the plaintiff and PCT. Page USIS 50 of these contract documents specifically references that the gross profit shall be divided equally between the plaintiff and PCT.

6.  The initial purchase order for the first project reflected a base contract price of $855,500.

7.  Thereafter, change orders increased the base contract price by the sum of an additional $224,028, resulting in a revised adjusted base contract price of $1,079,528.

8.  In accordance with the contract documents entered into between the plaintiff and PCT, the plaintiff would have received one half (½) of the gross profit derived from this adjusted base contract price of $1,079,528.

9.  The plaintiff mitigated its losses in the first project to the sum of $5,642.22, by the engagement of Stephen Bone as the Project Manager for PCT.


4.  JUDICIAL NOTICE

    A.  Plaintiff requests that the Court take judicial notice of the following facts:   NONE

    B.  Defendant objects to the taking of judicial notice for the following reasons:   N/A

5.    JUDICIAL NOTICE

   A.    Defendant requests that the Court take judicial notice of the following facts:  NONE

   B.    Plaintiff objects to the taking of judicial notice for the following reasons: N/A

6.    PLAINTIFF'S CONTESTED FACTS (Stated separately for each defendant. Proof shall be limited at trial to the matters set forth below. Failure to set forth any matter shall be deemed a waiver thereof.)

   A.    Plaintiff intends to prove the following contested facts with regard to liability:    N/A

   B.    Plaintiff intends to prove the following contested facts with regard to damages: (This must include each item of damages, the amount of each item, the factual basis for each item and, if punitive damages are claimed, the facts upon which plaintiff will rely to establish punitive damages.)

### First Project

1.    The profit margin to be applied to the adjusted contract price for the first project in determining the gross profit (of which the plaintiff is entitled to one half (1/2)) is thirty three percent (33%).

2.    The plaintiff is entitled to damages on the first project in the sum of $172,479.90, upon the following calculation:

| Base contract price | $ 855,500 |
|---|---|
| Change orders | $ 224,028 |
| Adjusted contract price | $ 1,079,528 |
| Gross profit percentage of 33% | $ 356,244.24 |
| One half of gross profit | $ 178,122.12 |
| Less mitigation | ($ 5,642.22) |
| Total damages on first project | $ 172,479.90 |

3.    The parties also stipulate that the interest rate applicable to an award of damages (subject to the discretion of the Court) shall be the New Jersey Court Rule 4:42-11 (which applies the rates of 5.5% for 2008, 4% for 2009, 1.5% for 2010 and .5% for 2011), and that as

to the first project, interest on the principal sum awarded shall be calculated, on a simple interest basis, from June 1, 2008 (30 days after the last change order). The parties have not stipulated that an award of interest must be made.

### Second Project

4.  On or about July 18, 2008, the plaintiff submitted a bid to PCT for another E&Y project in the gross sum of $168,597 (the second project.)

5.  The E&Y Request for Proposal for the first project mandated only the use of "union labor."

6.  As a result of the secondary boycott against the first project, the E&Y Request for Proposal for the second project, formulated after the secondary boycott/picket, required the use of "IBEW Union labor."

7.  The first and second projects involved the same owner (E&Y), the same kind of low voltage cabling and the same project location, and the plaintiff bid on this work to PCT by a July 18, 2008 bid.

8.  The plaintiff bid on the second project, but was not awarded this second project because of the changes to the E&Y Requests for Proposal from "union labor" to "IBEW Union labor" that resulted from the secondary boycott/picket against the first project.

9.  In connection with the second project, the plaintiff shall prove that the profit margin applicable to the bid of $168,597 for the second project is 42.2%, resulting in a profit that it would have received of $71,192.

### Costs

10.  The plaintiff will prove an entitlement to costs as <u>damages</u> pursuant to 29 U.S.C. §187, 29 U.S.C. §158(b)(4)(i)(B), *L. Civ. Rules* 54.1 and 54.2 (as well as taxable costs pursuant to 28 U.S.C. §1920.) The sum of the costs the plaintiff will prove (as of September 24, 2010), is $13,786.99. (The plaintiff reserves the right to seek additional costs as damages at the time of trial, as well as additional costs as an element of legal fees pursuant to its fee application which will be decided after trial.) The plaintiff is not seeking fees as an element of damages at trial, but, per the implication of the Court's February 24, 2011 order (ECF No. 136), will seek fees (and other costs) in a separate motion or proceeding after trial as determined by the Court.

### Pre-Judgment Interest

11.  For the first project, the plaintiff seeks an award of pre-judgment interest from June 1, 2008, on the principal sum found to be due and owing, at the pre-judgment interest rate for New Jersey tort actions provided for in New Jersey Court Rule 4:42-11 (which applies the rates of 5.5% for 2008, 4% for 2009, 1.5% for 2010 and .5% for 2011). Interest is sought from

June 1, 2008 because that date is more than 30 days after the date of the last change order for the first contract. The parties have stipulated the interest rate to be used by the Court in its discretion, but not that an award of interest must be made.

      12.    Interest is sought on the second project from a date thirty (30) days after the completion of the second project, at the stipulated interest rate reflected herein on a simple interest basis (subject to the Court's discretion.)

      7.    DEFENDANT'S CONTESTED FACTS (Stated separately for each plaintiff. Proof shall be limited at trial to the matters set forth below. Failure to set forth any matter shall be deemed a waiver thereof.)

      A.    Defendant intends to prove the following contested facts with regard to liability: N/A

      B.    Defendant intends to prove the following contested facts with regard to damages: (This statement must include the factual basis for each defense against plaintiff's claims for damages.)

      1. Plaintiff's claim for damages on the first project is speculative and unreliable. Plaintiff does not compute gross profit margins on its projects, as John Lagana testified. Therefore plaintiff has no basis to claim that it is entitled to the profit of 33% margin because that is what it expected to earn. Without a benchmark of what it customarily earned on prior projects, plaintiff's claim that it would have earned 33% profit margin on this project is wholly guess-work.

      2. The plaintiff's calculation of lost profit also must include a deduction for overhead expenses and costs, which plaintiff's damage calculation has not.

      3. The best evidence of what plaintiff's lost profits are on the project is the profit earned by the contractor that replaced plaintiff. The contractor that replaced plaintiff earned less than 5% on the project.

      4. The plaintiff was not precluded from bidding on the second contract, but rather chose not to submit a bid in conformity with the bid specifications as set by E&Y. That is, plaintiff decided not to use IBEW labor. There was no impediment to plaintiff employing IBEW labor in accordance with the bid specifications. Plaintiff has employed members of the defendant union on prior projects, and the defendant indicated a willingness to do so on this project.

      8.    PLAINTIFF'S WITNESSES (Aside from those called for impeachment purposes, only the witnesses whose names and addresses are listed below will be permitted to testify at trial.)

      A. On liability plaintiff intends to call the following witnesses who will testify in accordance with the following summaries: N/A

      B. On damages plaintiff intends to call the following witnesses who will testify in

accordance with the following summaries:

Plaintiff's witness list consists of the following persons who may be called to testify as witnesses:

1. John R. Lagana.

Mr. Lagana, a representative of the plaintiff, will testify about the plaintiff's business, both internally and *vis-à-vis* the subject marketplace; the subject first and second projects; the estimates for the first and second projects; the profit margins applicable to the first and second projects; the mitigation of damages for the first project; the damages incurred with the first project and the damages incurred with the second project. He will further testify as to the nature of the plaintiff's and its subcontractors' work, their efficiency, and the plaintiff's expectations of income from the first and second projects (profits). He will also testify as to the inefficiency of Local 164 IBEW signatory contractors.

2. Stephen Bone.

Mr. Bone, who was intended by the plaintiff to be the Project Manager on the first project, and who remained on that project in that capacity subsequent to plaintiff's removal, will testify as to the nature of the project and the manner in which the plaintiff intended to approach it so as to obtain the profit margin which it estimated. He will also testify as to the manner in which the first project progressed under the auspices of Star-Lo Electric subsequent to the plaintiff's removal. Mr. Bone will also testify about the plaintiff's bid for the second project.

3. Christopher Smith

Mr. Smith, an E&Y employee with knowledge of this transaction, will testify about the contract with PCT, work performed by the plaintiff, the work performed by PCT, the additional costs associated with the use of Star-Lo (the Local 164 signatory contractor that replaced the plaintiff) and the differences in the union labor required by the E&Y requests for proposal for the first and second projects. (The first project required only "union labor" and the second project formulated after the picket, required "IBEW Union Labor.")

4. <u>Stephen Trapp.</u>

Mr. Trapp, a Gale employee, will testify that the work performed by the plaintiff was satisfactory and that but for the actions of the defendant Local 164, Plaintiff would have completed the project as originally planned.

5. <u>James Zappala.</u>

Mr. Zappala, the owner of PCT, will testify about the nature of the joint venture that PCT entered into with the plaintiff; about the PCT contracts with E&Y and with the plaintiff; the profit margin that PCT and the plaintiff anticipated earning under the first project prior to the picket; the additional costs associated with the first project as a result of the plaintiff being thrown off the job by Local 164's secondary boycott activities and being replaced by a Local 164 signatory contractor (Star-Lo); PCT's ongoing relationship with the customer, E&Y, PCT's satisfaction with the plaintiff's services and desire to utilize the plaintiff on the first and second projects; the effectuation and implementation of the first contract as originally anticipated and as effectuated after the picket; the inability to entertain a bid from the plaintiff on the second project because of the changes made to the E&Y request for proposal resulting from the secondary boycott/picket on the first project; and the timetable and payments relating to the second project.

> C. Defendant objects to the following witnesses for the reasons stated:
>
> 1. John Lagana – Defendant objects to testimony concerning the "inefficiency of Local 164 signatory contractors" on the grounds that the witness lacks knowledge as to these facts and there is no foundation upon which he could base this testimony, and further that the testimony is irrelevant to plaintiff's claim for lost profit.
>
> 2. Stephen Bone – Defendant objects to this testimony on the grounds that it is not probative of what plaintiff's anticipated profits were on the project.
>
> 3. Chris Smith – Defendant objects to this testimony on the grounds that it is not relevant to plaintiff's claim for lost profit.
>
> 4. Stephen Trapp – Defendant objects to this testimony on the grounds that it is not relevant to plaintiff's claim for lost profit.

8

9. DEFENDANT'S WITNESSES (Aside from those called for impeachment purposes, only the witnesses whose names and addresses are listed below will be permitted to testify at trial.)

A. On liability defendant intends to call the following witnesses who will testify in accordance with the following summaries: N/A

B. On damages defendant intends to call the following witnesses who will testify in accordance with the following summaries:

1. Keith Misciagna. As a Business Agent for the Defendant which represents members employed by telecommunications contractors, he will testify as to what profit margins companies which employ the members he represents customarily earn on projects of comparable size and scope to the one at issue.

2. Thomas Misciagna. As the Assistant Business Manager for the Defendant which represents members employed by telecommunications contractors, he will testify as to what profit margins companies which employ the members he represents customarily earn on projects of comparable size and scope to the one at issue.

3. Richard Imperato. As the owner of a telecommunications company in New Jersey, he will testify as to what profit margin his company customarily earns on projects of comparable size and scope to the one at issue.

4. Daniel Holland. As the owner of a telecommunications company in New Jersey, he will testify as to what profit margin his company customarily earns on projects of comparable size and scope to the one at issue. He will further testify as to the actual profit margin his company earned on the project after replacing plaintiff.

C. Plaintiff objects to the following witnesses for the reasons stated:

As to each of the witnesses proposed by defendant Local 164, the plaintiff objects to testimony beyond the scope of their personal knowledge, or of an expert or specialized lay opinion witness nature, for several reasons. First, testimony by Keith Misciagna or Thomas Misciagna about the nature of the telecommunications industry, generally, of the low voltage and high voltage components of this industry, generally, or of profit margins, would be expert in nature and thus inadmissible because they have not been designated nor accepted by the Court as expert witnesses. Specialized lay opinion witness testimony from Keith Misciagna or

9

Thomas Misciagna that would tend to suggest the profit margin that could have been earned by the plaintiff is both insufficient as a matter of law because the information is not specifically known to these witnesses, and is also not relevant. Further, there has been no foundation laid that either witness has any basis to testify in this regard. What someone else may have earned as a profit margin is simply not relevant to what the plaintiff may have earned.

Likewise, Richard Imperato and Daniel Holland, who are Local 164 signatory contractors, are objected to to the extent they seek to offer expert testimony (they were not named as experts) or specialized lay witness opinion testimony non-specific to their businesses. Specialized lay witness opinion testimony offered to suggest the profit margin the plaintiff may have earned is insufficient as a matter of law because these witnesses possess insufficient and non-specific knowledge and information about the plaintiff's business.

Testimony as to the profit margin that Mr. Imperato earns on his projects is irrelevant as a matter of fact, and inadmissible as expert testimony because he has not been designated as an expert. Testimony as to what Mr. Holland's company earned on this project by way of a profit margin is also not relevant to the question to what the plaintiff would have earned had it not been thrown off the job by the secondary boycott acts of defendant Local 164 because the profit margin that his company earned is unrelated to the profit margins that the plaintiff earns. Neither Mr. Imperato nor Mr. Holland has any specific information or knowledge as to the plaintiff's business and, as such, they should be precluded from testifying, as a matter of law, as to the plaintiff's profits.

The plaintiff intends to move *in limini* in regard to these witnesses.

10. EXPERT AND SPECIALIZED LAY OPINION WITNESSES (No expert or specialized lay opinion witness offering scientific, technical or other specialized knowledge will be permitted to testify at trial unless listed below. A summary of the expert's qualifications and a copy of his/her report must be provided for the Court's review at the pretrial conference. Said summary shall be read into the record at the time he/she takes the stand, and no opposing counsel shall be permitted to question his/her qualifications unless the basis of the objection is set forth herein.)

A. Plaintiff's expert and specialized lay opinion witnesses are:

The plaintiff has no expert witnesses, but offers John Lagana as a specialized lay opinion witness in addition to a fact witness.

10

      B.  Defendant's objections to the qualifications of plaintiff's experts and specialized lay opinion witnesses are: NONE.

      C.    Defendant's expert and specialized lay opinion witnesses are: None.

      D.    Plaintiff's objections to the qualifications of defendant's experts and specialized lay opinion witnesses are:

The plaintiff objects to an effort by defendant Local 164 to offer its facts witnesses as expert witnesses or specialized lay opinion witnesses for the reasons set forth above and contained in any *in limini* motions.

      11.    PLAINTIFF'S DEPOSITIONS (List, by page and line, all deposition testimony to be offered into evidence. All irrelevant and redundant matters and all colloquy between counsel must be eliminated, unless ruled relevant. Deposition testimony to be used solely for impeachment purposes need not be listed.)

      A.    On liability plaintiff intends to read into evidence the following: N/A

      B.    On damages plaintiff intends to read into evidence the following:

1. John Lagana (Damages motion Ex. 29/ECF filing 121).

    83:12 to 102:9

    111:19 to 116:4.

2. Christopher Smith: (Damages motion Ex. 15/ECF filing 68-1).

    10:5-23

    14:22-25

    15:1

    19:13-20:14

    52:19 to 53:24

    53:2-3

    53:25-25

   3. Stephen Trapp (Damages motion Ex. 20/ECF filing 69-4

      57:18-25

   4. James Zappala (Damages motion Ex. 14/ECF filing 68)

      6:2-6

      10:4-9

      81:16-18

      86:16-22

      106:8 to 107:20

      108:17 to 109:1

      123:22 to 124:2

      136:2-11

      137:4-13

      138:5-12

   C.   Defendant objects to the deposition testimony set forth above for the reasons stated:

   12.    DEFENDANT'S DEPOSITIONS (List, by page and line, all deposition testimony to be offered into evidence. All irrelevant and redundant matters and all colloquy between counsel must be eliminated, unless ruled relevant. Deposition testimony to be used solely for impeachment purposes need not be listed.)

   A.   On liability defendant intends to read into evidence the following: N/A

   B.   On damages defendant intends to read into evidence the following:

John Lagana:

      99: 5-25

      100: 1-5

114: 21-25

115: 1-14

    C.    Plaintiff objects to the deposition testimony set forth above for the reasons stated:    NONE.

    13.    PLAINTIFF'S EXHIBITS (Except for exhibits the need for which could not reasonably have been foreseen or which are used solely for impeachment purposes, only the exhibits set forth on the exhibit list attached hereto may be introduced at trial. Any objection to an exhibit, and the reason for said objection, must be set forth below or it shall be deemed waived. All parties hereby agree that it will not be necessary to bring in the custodian of any exhibit as to which no such objection is made.)

    A.    Plaintiff intends to introduce into evidence the exhibits listed on the attached exhibit list (list by number with a description of each exhibit): *See* attached list.

The parties will submit a single numbered list of all exhibits, including a brief description and any objection to the exhibit, in accordance with this court's July 8, 2011 order (ECF No. 143), paragraph 2, and submitted in hard copy form delivered to chambers, and in electronic form.

    B.    Defendant objects to the introduction of plaintiff's exhibits (set forth number of exhibit and grounds for objection):

    Defendant objects to the introduction of plaintiff's exhibit #5 on the grounds that it constitutes inadmissible hearsay under Fed.R.Evid. 1006. Exhibit # 5 is a summary chart which purportedly sets forth the profits earned by plaintiff on other projects. Under Fed.R.Evid. 1006, the proponent of a summary chart must establish a foundation that both the underlying materials upon which the summary is based are admissible and that the underlying documents were made available to the opposing party for inspection. Plaintiff has not made the underlying documents available to defendant for inspection.

    14.    DEFENDANT'S EXHIBITS (Except for exhibits the need for which could not reasonably have been foreseen or which are used solely for impeachment purposes, only the exhibits set forth on the exhibit list attached hereto may be introduced at trial. Any objection to an exhibit, and the reason for said objection, must be set forth below or it shall be deemed waived. All parties hereby agree that it will not be necessary to bring in the custodian of any exhibit as to which no such objection is made.)

    A.    Defendant intends to introduce into evidence the exhibits listed on the attached exhibit list (list by number with a description of each exhibit): NONE.

B. Plaintiff objects to the introduction of defendant's exhibits (set forth number of exhibit and grounds for objection): N/A.

(COPIES OF EXHIBITS ARE TO BE MADE FOR OPPOSING COUNSEL, AND A BENCH BOOK OF EXHIBITS IS TO BE DELIVERED TO THE JUDGE AT THE START OF TRIAL. IF COUNSEL DESIRES TO DISPLAY EXHIBITS TO THE JURY, SUFFICIENT COPIES SHOULD BE AVAILABLE TO PROVIDE EACH JUROR WITH A COPY; ALTERNATIVELY, ENLARGED PHOTOGRAPHIC OR PROJECTED COPIES MAY BE USED.)

15. PLAINTIFF'S LEGAL ISSUES

The plaintiff's legal issues are the following:

1. The plaintiff is entitled to its damages under §303 of the National Labor Relations Act, 29 U.S.C. §187, and such damages include damages related to the first project and related to the second project

2. The plaintiff is entitled to all damages that flow from the secondary boycott/picket already determined by the Court, such damages being those incurred in connection with the first project and those incurred in connection with the second project.

3. The plaintiff does not have an obligation to prove damages in an exact manner or to a certainty.

4. The court has already determined there is a direct nexus between Local 164's actions and the plaintiff's damages.

5. The plaintiff's damages are equal to the amount that it would have realized upon its completion of its contract with PCT (first project), as well a profit it would have received from the second project (in addition to costs and interest awardable as damages).

6. The plaintiff has established its damages to a reasonable certainty on the both the first and second projects, including its entitlement to specified gross profit margins, and that it mitigated its damages.

7. The plaintiff is entitled to recover the reasonable costs incurred in connection with the action as a damage pursuant to statute.

8. The plaintiff is entitled to pre-judgment interest. (The parties have stipulated that interest on the first project should run from June 1, 2008, and that the interest rates provided for New Jersey Court Rule 4:42-11 should be utilized if there is an award of interest, subject to the discretion of the Court.) The parties have not stipulated that an award of interest must be made.

9. The plaintiff is entitled to recover its gross profits as damages.

10. Local 164's contentions as to the plaintiff's profit margins are wholly unsupported in the record.

11. Local 164 is not permitted to offer expert testimony or specialized lay opinion testimony.

## 16. DEFENDANT'S LEGAL ISSUES

1. An award of damages for a violation of § 303 of the Labor Management Relations Act ("LMRA") must be based upon "actual, compensatory damages." Austin Co. v. IBEW, Local 701, 665 F.Supp. 614, 617 (N.D. Ill. 1987). "The damages must be non-speculative and the direct and proximate result of the proscribed conduct." Teamsters, Local 20 v. Morton, 377 U.S. 252, 260 (1964). Any loss claimed may not be conjectural or speculative. Federal Prescription Service, Inc. v. Amalgamated Meat Cutters, 527 F.2d 269, 280 (8th Cir. 1975).

2. The accepted method of calculating lost profit is to deduct overhead expenses and costs. Lawton v. Melville Corp., 1997 WL 346129, * at 2 (2d Cir. 1997) (overhead is an appropriate deduction in determining lost profits); Murphy Door Bed Co., Inc. v. Interior Sleep Svs. Inc., 874 F.2d 95, 103 (2d Cir. 1989) (reversing judgment based on gross profits and remanding for recalculation of compensatory damages based on net profits); W.E. Bassett Co. v. Revlon, Inc., 435 F.2d 656, 665 (2d Cir. 1970) (in determining profits for trademark liability, deducting overhead, operating expenses and income tax from net sales).

3. Plaintiff's claim for damages on the second contract was dismissed in the Court's summary judgment Opinion, where the Court held that the claim for tortuous interference with future contracts is preempted by the LMRA and granted summary judgment in favor of the defendant on counts four. Plaintiff is attempting to bootstrap a claim for damages arising out of a secondary boycott which the Court found occurred on the first project into a claim for damages on a future project. Firstly, this is itself a claim for tortuous interference with a future contract, which the Court dismissed. Secondly, as a matter of law, lost profits on future work are not recoverable under § 303. Matson Plastering Co. v. Plasters and Shophands Local No. 66, 852 F.2d 1200, 1203 (9th Cir. 1988) cert. denied, 488 U.S. 994 (1988) ("We have never awarded damages for lost opportunities to bid on construction projects... Because Matson did not bid on these subsequent contracts, we hold that any damages resulting from its lost opportunities are not available under section 303."); Collier v. Hoisting and Portable Engineers Local Union No. 101, 761 F.2d 200 (10th Cir. 1985) (holding that the employer was not entitled to lost profits for subsequent projects because it had failed to bid on available projects); Hyatt Chalet Motels, Inc. v. Salem Building and Construction Trades Council, 298 F.Supp. 699 (D.C. Oregon 1968) (recognizing that where the employer alleged it would have been able to bid on subsequent projects but was not because of the union's unlawful conduct, the employer was not entitled to damages on those subsequent contracts because it was speculative to assume they would have been the lowest bidder and awarded the contract).

17. MISCELLANEOUS

Set forth any other matters which require action by, or should be brought to the attention of, the Court.

Attorneys' fees sought by the plaintiff and by PCT, as well as costs of suit not otherwise awarded as damages to the plaintiff, shall be addressed by way of motion or otherwise after the trial and judgment or other ruling.

The parties also stipulate that the interest rate applicable to an award of damages (subject to the discretion of the Court) shall be the New Jersey Court Rule 4:42-11 (which applies the rates of 5.5% for 2008, 4% for 2009, 1.5% for 2010 and .5% for 2011), and that as to the first project, interest on the principal sum awarded shall be calculated, on a simple interest basis, from June 1, 2008 (30 days after the last change order). The parties have not stipulated that an award of interest must be made.

The plaintiff stipulates that it is not pursuing a claim at trial for the " maintenance" or "second-day work."

18. JURY TRIALS - the following should be submitted to the Court **no later than Two (2) weeks prior to trial:** N/A

A. Each side shall submit to the Judge and to opposing counsel a trial brief or memorandum in accordance with Local Civil Rule 7.2, with citations to authorities and arguments in support of its position on all disputed issues of law.

B. The parties shall confer and agree upon jury instructions and submit them to the court with supporting authorities on two separate wordperfect discs. The first disc will contain the agreed-upon instructions, and the second disc will contain disputed instructions with the parties' alternative proposals.

C. If any hypothetical questions are to be put to an expert witness on direct examination, these shall be submitted to the Judge and to opposing counsel.

D. Counsel shall jointly submit to the Court a single set of proposed <u>voir dire</u> questions as to which the parties are in agreement, not to exceed 30 questions.

E. Counsel shall jointly submit to the Court a single proposed special verdict sheet on a wordperfect computer disc.

F. The parties shall prepare a joint trial exhibit list containing a description of all exhibits that is divided into two sections. The first section will identify the exhibits for which no objection has been raised, and the second section shall list those exhibits for which one of the parties has made an objection. The exhibits themselves are to be premarked and must include exhibit stickers. The parties must prepare a copy of all exhibits that they expect to use at trial for the Judge, Court reporter, and opposing counsel.

19. NON-JURY TRIALS - <u>The following shall be submitted to the Court no later than Two (2) weeks prior to trial:</u>

A. Each side shall submit to the Judge and opposing counsel a trial brief or memorandum in accordance with Local Civil Rule 7.2 with citation to authorities and arguments in support of its position on all disputed issues of law.

In lieu of trial briefs, the trial court will utilize the briefs submitted by the parties in connection with the "damages" and "fees" motions on September 22, November 1 and November 22, 2010 (Damages: ECF Nos. 120-2, 131 and 133, and Fees (if necessary): ECF Nos. 122-2, 130 and 132.)

B. Each side shall submit to the Judge and other counsel proposed written findings of fact and conclusions of law. There is reserved to counsel the right to submit additional proposed findings of fact and conclusions of law during the course of the trial on those matters that cannot reasonably be anticipated.

> Should the Court require the submission of proposed written findings of fact or conclusions of law, the parties shall submit these within _____ business days of the conclusion of testimony or as otherwise directed by the Court.

C. If any hypothetical questions are to be put to an expert witness on direct examination, they shall be submitted to the Judge and opposing counsel. N/A

D. Counsel shall provide the Court with a copy of its proposed findings of fact and conclusions of law on a computer disk in a WordPerfect readable format.

20. TRIAL COUNSEL (List the names of trial counsel for all parties.)

Steven D. Grossman, Esq. and Laura G. Weiss, Esq. for the plaintiff.

Raymond G. Heineman, Esq. and Michael G. McNally, Esq. for defendant Local 164.

21. BIFURCATION (Where appropriate, the issues relating to liability shall be severed and tried to verdict. Thereafter, all issues relating to damages shall be tried. The issues of liability and damages SHALL/SHALL NOT be tried separately.) N/A

22. ESTIMATED LENGTH OF TRIAL



~~_____ days for liability~~ and __3__ days for damages. *MY*

AMENDMENTS TO THIS PRETRIAL ORDER WILL NOT BE PERMITTED UNLESS THE COURT DETERMINES THAT MANIFEST INJUSTICE WOULD RESULT IF THE AMENDMENT IS DISALLOWED. THE COURT MAY FROM TIME TO TIME SCHEDULE CONFERENCES AS MAY BE REQUIRED EITHER ON ITS OWN MOTION OR AT THE REQUEST OF COUNSEL.

_____
(Attorneys for Plaintiff)

_____
(Attorneys for Defendant)

Dated: 7/25/11

_____
Hon. Mark Falk, U.S.M.J.

(EXHIBIT LIST FOLLOWS)

## Plaintiff's Exhibit List

1. June 30, 2005 Master Supply Agreement between E&Y and PCT.

2. July 23, 2007 Joint Venture Agreement between the plaintiff and PCT.

3. July 23, 2007 Master Supply Agreement between plaintiff and PCT.

4. USIS 1468, a document related to the first project.

5. USIS 2566, a summary of ten (10) jobs with profit margins equal to or in excess of the first project, and with one job where the profit margin was equal to the second project.

6. USIS 1198 and USIS 2699, which reflect the plaintiff's mitigation of damages in connection with the first project.

7. PCT 158-161, the PCT purchase order that reflects the base contract price for the first project of $855,522.

8. PCT 108 to 137, which show additional charges (change orders) to the base contract price of $224,028, resulting in (post secondary boycott picket) an adjusted base contract price total of $1,079,528.

9. PCT 166 and PCT 266, which is the relevant portion of the E&Y request for proposal in connection with the first project and which required only "Union Labor."

10. PCT 788-801, the E&Y request for proposal (post secondary boycott picket) for the second project which now required "IBEW Union Labor."

11. PCT 2-9, which is the plaintiff's July 18, 2008 proposal for the second project, labor only, for $168,597.

12. USIS 2693-2698 (a portion of the Walder Firm's billing documentation that evidences costs through July 13, 2010 of $13,236.25.)

13. USIS 2636, 2637, 2644, 2650, 2651, 2657, 2658, 2662, 2666, 2676, and 2690, which are portions of Ms. Weiss' invoices that reflects costs through July 2010.