**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| U.S. INFORMATION SYSTEMS, INC., <br><br> Plaintiff, <br><br> v. <br><br> INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL UNION NUMBER 164, AFL-CIO, <br><br> Defendant. | Civil Action No.: 08-1125 (JLL) <br><br> **OPINION** |
| INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL UNION NUMBER 164, AFL-CIO, <br><br> Third-Party Plaintiff, <br><br> v. <br><br> GALE CONSTRUCTION COMPANY, ERNST & YOUNG, LLP, PREFERRED COMMUNICATION TECHNOLOGIES, et al., <br><br> Defendant. | |

**LINARES**, District Judge

This matter comes before the Court by way of a motions for fees and costs by Plaintiff U.S. Information Systems, Inc. ("Plaintiff") and by Third-Party Defendant Preferred Communication

1

Technologies ("PCT"). The Court has considered the submissions made in support of and in opposition to the instant motions. No oral argument was heard. Fed. R. Civ. P. 78. Based on the reasons that follow, Plaintiff and PCT's motions are DENIED.

## BACKGROUND

The Court will not set forth the underlying facts in detail, unless relevant for purposes of the motions at bar. In its May 5, 2010 opinion, the Court found that in conducting a picket on August 16, 2007, Defendant "Local 164's true object was to force PCT to cease doing business with the Plaintiff in order to obtain the Ernst & Young telecommunications Project for one of its own signatory contractors." (CM/ECF No. 96, 16). The Court continued, "[p]icketing for such a proscribed object constitutes a secondary boycott in violation of 29 U.S.C. § 158(b)(4)(i)(B)" and granted Plaintiff's motion for summary judgment as to this claim, accordingly. (CM/ECF No. 96, 16). With regard to Plaintiff's tortious interference claim, the Court denied summary judgment, finding that the claim was preempted by § 303 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 187. Accordingly, Defendant's motion for summary judgment was denied as moot as to the secondary boycott claim (29 U.S.C. § 158(b)(4)(i)(B)), granted in so far as § 303 of the LMRA preempted the state law tortious interference claims, and granted as to Plaintiff's jurisdictional picketing claim (29 U.S.C. § 158(b)(4)(i)(D)). (CM/ECF No. 96, 19-21). Finally, the Court granted PCT's motion for summary judgment regarding Local 164's claim against PCT for contribution, pursuant to the Joint Tortfeasors Contribution Law, N.J.S.A. 2A:53A-1 to -5 and the Comparative Negligence Act, N.J.S.A. 2A:15-5.1 to 5.17, as moot due to the finding that those claims were preempted by § 303 of the LMRA, 29 U.S.C. § 187. (CM/ECF No. 96, 21).

On September 16, 2011, this Court entered final judgment in the sum of $180,000, inclusive of damages and costs of suit against Local 164 and in favor of Plaintiff. (CM/ECF No. 163). As per a stipulation between the parties, final judgment in favor of Plaintiff included legal costs, but excluded legal fees. (CM/ECF No. 162). Both Plaintiff and PCT now ask this Court to order that Local 164 pay all of their respective fees pursuant to the Court's inherent power or, in the alternative, pursuant to 28 U.S.C. § 1927.

## LEGAL STANDARDS

### A. The Court's Inherent Power to Order Payment of Fees and Costs

"[A]n award of fees and costs pursuant to the court's inherent authority to control litigation will usually require a finding of bad faith." In re Prudential Ins. Co Am. Sales Practice Litig. Agent Actions, 278 F.3d 175, 181 (3d Cir. 2002). Further, "a court has the inherent authority to impose sanctions when an attorney has acted 'in bad faith, vexatiously, wantonly, or for oppressive reasons.'" Id. (quoting Chambers v. NASCO, Inc., 501 U.S. 32, 45-46 (1991)).

In addition, a court should invoke its inherent power sparingly and under limited circumstances where misconduct is clear. "Generally, a court's inherent power should be reserved for those cases in which the conduct of a party or an attorney is egregious and no other basis for sanction exists." Martin v. Brown, 63 F.3d 1252, 1265 (3d Cir. 1995). "However, because of their very potency, inherent powers must be exercised with restraint and caution." Prudential Ins. Co. 278 at 189 (quoting Chambers, 501 U.S. at 45, 111 S.Ct. 2123).

### B. Section 1927 of Title 28 of the United States Code

3

Section 1927 provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. "As evidence from the text of the statute, § 1927 requires a court to find an attorney has (1) multiplied proceedings; (2) in an unreasonable and vexatious manner; (3) thereby increasing the costs of the proceedings; and (4) doing so in bad faith or by intentional misconduct." Prudential Ins. Co, 278 F.3d at 188. As per Third Circuit precedent, "a finding of willful bad faith on the part of the offending lawyer is a prerequisite for imposing attorney's fees under this provision." Hackman v. Valley Fair, 932 F.2d 239, 242 (3d Cir. 1991); Baker Industries v. Cerberus Ltd., 764 F.2d 204, 208 (3d Cir. 1985) ("This bad faith requirement is seen necessary to avoid chilling an attorney's legitimate ethical obligation to represent his client zealously . . . .")

Further, "[b]ad faith is a factual determination reviewable under the clearly erroneous standard. Once a finding of bad faith has been made, the appropriateness of sanctions is a matter entrusted to the discretion of the district court." Id. "Indications of this bad faith are findings that the claims advanced were meritless, that counsel knew or should have known this, and that the motive for filing the suit was for an improper purpose such as harassment." Prudential Ins. Co. 278 F.3d at 188. If the court finds that sanctions should be imposed under § 1927, it must only award those costs and expenses resulting from particular misconduct. Id. Finally, "the power to assess costs on an attorney in a given case is a power which 'courts should exercise only in instances of a serious and studied disregard for the orderly process of justice.'" Ford v. Temple Hospital, 790 F.2d 342, 347 (3d Cir. 1986) (citations omitted).

4

## DISCUSSION

Generally, each party to a lawsuit bears its own attorneys' fees and costs, the rationale being a concern that litigants should not be penalized for defending or prosecuting a lawsuit or discouraging people from vindicating their rights. Ford v. Temple Hospital, 790 F.3d 342, 346 (3d Cir. 1986). However, there are certain exceptions to this well-established rule "where necessary to further the interests of justice," such as bad faith, willful disobedience of a court order, and common fraud. Summit Valley Indus. Inc. v. Local 112, United Brotherhood of Carpenters and Joiners of America, 456 U.S. 717, 721 (1982) (citations omitted).

A primary exception exists where a statute awards attorneys fees to the prevailing party. However, this is not the case here. Section 303 of the LMRA provides a right of action whereby an employer who has been injured by a union's unfair labor practice "shall recover the damages by him sustained and the cost of the suit." Summit Valley Indus., 456 U.S. at 722 (quoting 29 U.S.C. § 187(b)). Notably, § 303 does not provide attorney's fees to a prevailing plaintiff and the Supreme Court has declined to read such an exception into the statute. 29 U.S.C. § 187(b); Summit Valley Indus., 456 U.S. at 726.

Notwithstanding, PCT and Plaintiff ask the Court to require Local 164 to pay their attorneys' fees pursuant to either the Court's inherent powers or 28 U.S.C.A. § 1927.

**1. The Addition of Third-Party Defendants and Refusal to Dismiss PCT**

PCT argues that Local 164 knew that there "was no basis in law or fact for its claims against PCT, nor any defense to secondary boycott claims" and that PCT "improperly instituted and continued meritless, frivolous litigation against PCT." (PCT Br., 2-3). Plaintiff argues that

5

Defendant multiplied the litigation by the addition of third-party defendants, which resulted in additional third party practice paper discovery, deposition discovery, motion practice, and other legal services. (Plaintiff Br., 14-16). In response, Local 164 argues that in refusing to dismiss PCT, they advanced "a colorable claim, that PCT contributed to [Plaintiff]'s contract damages by rescinding the two parties' contract," for which there was no "unequivocal precedent which would render Local 164's contract claim futile." (Def. Opp'n., 7).

In its May 10, 2010 opinion, the Court stated: "Thus, the theory underlying the Third-Party Complaint is that, in the event that Local 164 were to be found liable to the Plaintiff for the claim of tortious interference with a prospective economic advantage, 'PCT is liable to Local 164 because PCT was the one who knew of Plaintiff's potential future contracts and intentionally interfered with those contracts when it terminated its contract with Plaintiff' for work on the Project.'" (CM/ECF No. 96, 22). As discussed above, the Court did not discuss the issue at length, as the tortious interference claim was preempted and thus moot. However, the Court finds that refusing to voluntarily dismiss PCT on these grounds was sufficient.

PCT further argues that "Local 164's counsel, in refusing to drop its claims against PCT, while dismissing claims against the other Third-Party Defendants, after facts revealed in discovery patently showed Local 164 had no valid claims against PCT, unreasonably and vexatiously multiplied the litigation." (PCT Br., 14).[1] PCT argues that after the deposition of Keith Misciagna on December 15, 2009, Local 164's counsel knew or should have known that

---

[1] In addition, PCT argues that it was improper for Local 164 to maintain state claims against PCT while arguing that they were preempted § 303. Local 164 argues that refusing to dismiss PCT was "a strategic and calculated decision . . . in anticipation of the Court ruling in favor of Local 164, but not reaching the question of preemption and thereby keeping those claims alive for a state court proceeding" in order to have the opportunity to seek contribution from PCT. (Def. Opp'n., 8). The Court declines to find that this was done in bad faith, as it is common practice for attorneys to argue in the alternative.

their client's claims were meritless. In response, Local 164 argues that conceding liability is inappropriate due to the existence of unfavorable testimony and does not comport with counsel's obligation to represent its client. (Def. Opp'n., 9). Local 164 further argues that refusing to dismiss PCT was "a strategic and calculated decision . . . in anticipation of the Court ruling in favor of Local 164, but not reaching the question of preemption and thereby keeping those claims alive for a state court proceeding" in order to have the opportunity to seek contribution from PCT. (Def. Opp'n., 8). The Court finds that refusing to voluntarily dismiss PCT before the Court ruled on claims for which Local 164 hoped to apportion liability to PCT did not constitute bad faith.

Similarly, that Local 164 voluntarily dismissed other third-party defendants and not PCT, does not justify a finding that the latter was done in bad faith. Local 164 argues that the other third-party defendants were dismissed at the repeated instance of their respective counsels and because of different factual considerations. "Gale Construction was the general contractor and had no contractual rights or obligations concerning the installation of the telecommunications . . . E & Y was also properly dismissed as it became apparent to Local 164 that E&Y had made a reasonable and valid business decision in directing PCT to resolve the dispute." (Def. Opp'n., 12). PCT argues in its Reply that "Local 164 cannot identify any legal basis to distinguish frivolous litigation against EY, as opposed to frivolous litigation against PCT." (PCT Reply, 10-11). Simply put, under the attendant circumstances, that Local 164 chose to dismiss certain third-party defendants and not others does not rise to the level of bad faith.

## 2. Elongation and Multiplication of Litigation

7

Plaintiff sets forth "various specific unreasonable acts of Local 164 that elongated this litigation," which include as follows: that in 2008 "Local 164 stated it would not honor the confidentiality designation of the Collective Bargaining Agreement that was the subject of the litigation"; the addition of third-party defendants by Local 164; that in 2009 Defendant "sought to disregard the confidentiality designation of the CBA, and then undertook motion practice to remove the designation from the document only to withdraw the motion at the 11th hour under unclear and curious circumstances"[2]; the need to prove that Local 164 never knew the wage and benefit data because they refused to acknowledge as such; and that Plaintiff prosecuted a successful summary judgment motion (Pl. Br., 37-39).

While, particularly in regard to the discovery disputes, counsel may have neglected to attain standards of professionalism, the conduct complained of, as individual acts or considered in its totality, simply does not suffice to warrant the imposition of fees based on the Court's inherent powers or under 28 U.S.C. §1927.

## CONCLUSION

Therefore, while it is inarguable that certain actions by both Defendant and Defendant's counsel were less than exemplary at times, the Court declines to invoke its inherent power to award attorney's fees and similarly finds that the imposition of fees under 28 U.S.C. §1927 as unwarranted in light of the extraordinary nature of the remedy that Plaintiff and PCT seek. The Court finds that the conduct complained of was neither egregious nor done willfully in bad faith.

---

[2] With regard to this point, Plaintiff argues, in part, that a representative of Defendant Local 164 tampered with evidence by removing certain markings from the Collective Bargaining Agreement, but concedes that the issue is only a small aspect of the issue at hand and argues that this is but another example of "careless disregard for the facts and truth." (Pl. Reply, 4). Again, this conduct, while certainly less than exemplary, fails to rise to the level necessary to justify a finding of bad faith in light of the circumstances.

Accordingly, PCT and Plaintiff's motions for an award of attorney's fees are DENIED.

An appropriate Order accompanies this Opinion.

DATE: October 25, 2011

JOSE L. LINARES,
UNITED STATES DISTRICT JUDGE